UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALMA KOSS; WANDA WENTE, by and )
through her next friend Virginia Hartman; )
MARY SMALL, by and through her next )
friend Brian Small; LESSIE HARRIS, by and )  Case No.
through her next friend Opal Acklin; and )
BERTA CHRISTMAN; individually and on )  Hon. _____
behalf of a class of similarly situated, )
)
        Plaintiffs, )
)
v. )
)
FELICIA F. NORWOOD, in her official )
capacity as the Director of the Illinois )
Department of Healthcare and Family )
Services; and JAMES T. DIMAS, in his )
official capacity as the Secretary of the Illinois )
Department of Human Services, )
)
        Defendants. )

## CLASS ACTION COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through their attorneys, Lane Powell PC and Robert H. Farley, Jr., Ltd., and on behalf of all members of the class, bring this Class Action Complaint against the above-named Defendants and their employees, agents, delegates, and successors in office, in their official capacity, and in support thereof state the following:

## INTRODUCTION AND NATURE OF THE ACTION

1.      This civil action is brought pursuant to 42 U.S.C. § 1983, the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a), to vindicate rights secured by federal law, as well as the United States Constitution.

2.      Plaintiffs, all of whom are impoverished or disabled, are individuals who have applied for eligibility to receive long-term care Medicaid benefits in nursing facilities ("NFs") or supportive living facilities ("SLFs") from the Illinois Department of Healthcare and Family Services ("HFS"), the agency that administers Illinois's Medicaid programs. The responsibility for determining eligibility for such benefits has been delegated to the Illinois Department of Human Services ("DHS"). HFS and DHS are collectively referred to as the "Departments."

3.      Federal law requires the Departments to determine Plaintiffs' and Class Members' eligibility for and pay long-term care Medicaid benefits with "reasonable promptness," and, in all events, the Departments must determine eligibility or provide an opportunity for a hearing on their failure to act with reasonable promptness no later than forty-five (45) days from the date of application, or ninety (90) days if the application is based exclusively on the basis of disability.

4.      The Departments failed to determine Plaintiffs' and Class Members' eligibility for long-term care Medicaid benefits and/or pay such benefits with reasonable promptness, and, likewise, failed to provide Plaintiffs and Class Members with an opportunity for a hearing regarding their delay, in violation of the Medicaid Act and Due Process.

5.      Statistics compiled and published by HFS show that, as of April 3, 2017, over 3,500 applications, including those of Plaintiffs and Class Members, remained pending past 45 days and over 2,000 remained pending past 90 days. Worse yet, even though the Departments are well-aware of their non-compliance with the law, the number of applications pending past the Medicaid Act's "reasonable promptness" deadlines has only increased over the last several years.

6.      In addition, even after Plaintiffs and Class Members are deemed eligible for long-term care Medicaid benefits, the Departments failed to immediately deem them "admitted" into the long-term care facility in which they already reside, thereby further unreasonably delaying

2

the provision of Medicaid benefits to which they are entitled.        Here, too, HFS's statistics show that, as of April 3, 2017, more than 3,300 Class Members have been waiting over 90 days for the Departments to deem them "admitted" to their facilities, and well over 1,500 have been waiting for 6 months or more. HFS candidly attributes the problem to "Delay with State."

7.      The Departments' violation of Plaintiffs' and Class Members' privately enforceable statutory, regulatory and constitutional rights has inflicted both financial and irreparable harm on Plaintiffs and Class Members, including, but not limited to, deprivation or the imminent risk of deprivation of necessary long-term nursing care, medical services, prescription drug benefits and other public assistance.

8.      Plaintiffs seek prospective declaratory and injunctive relief against Defendant Felicia F. Norwood ("Norwood"), in her official capacity as Director of HFS, and against Defendant James T. Dimas ("Dimas"), in his official capacity as Secretary of DHS, on behalf of themselves and a class of similarly-situated individuals, to force the Departments to fully comply with their obligations to promptly determine eligibility for and pay long-term care Medicaid benefits.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

10.      Declaratory relief is authorized by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

120481.0007/6896892.10

## PARTIES

11.    Plaintiff Alma Koss is an 88-year-old woman who requires supportive living care services. She currently resides at Prairie Winds of Urbana in Urbana Illinois, a SLF participating in the Illinois Medicaid program.

12.    Plaintiff Wanda Wente is a 79-year-old woman who requires long-term nursing care. She currently resides at Stearns Nursing and Rehabilitation in Granite City, Illinois, a NF participating in Illinois's Medicaid program. Pursuant to Federal Rule of Civil Procedure 17(c), Wanda Wente brings this action through her daughter, power of attorney and next friend Virginia Hartman.

13.    Plaintiff Mary Small is a 90-year-old woman who requires long-term nursing care. She currently resides at Carrier Mills Nursing and Rehabilitation Center in Carrier Mills, Illinois, a NF participating in Illinois's Medicaid program. Pursuant to Federal Rule of Civil Procedure 17(c), Mary Small brings this action through her nephew, power of attorney and next friend Brian Small.

14.    Plaintiff Lessie Harris is a 90-year-old woman who requires long-term nursing care. She currently resides at Stearns Nursing and Rehabilitation Center in Granite City, Illinois, a NF participating in Illinois's Medicaid program. Pursuant to Federal Rule of Civil Procedure 17(c), Lessie Harris brings this action through her sister, power of attorney and next friend Opal Acklin.

15.    Plaintiff Berta Christman is a 68-year-old woman who requires supportive living care services. She currently resides at Heritage Woods of Watseka in Watseka, Illinois, a SLF participating in Illinois's Medicaid program.

4

16.     Defendant Norwood is the Director of the Illinois Department of Healthcare and Family Services, which is the single state Medicaid agency for Illinois that is responsible for the oversight and administration of the Medicaid program under Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10. Norwood is responsible for ensuring that Illinois's Medicaid programs comply with federal law. Norwood is sued in her official capacity.

17.     Defendant Dimas is the Secretary of the Illinois Department of Human Services, which accepts and processes applications for Medicaid enrollment on behalf of the State of Illinois under an intergovernmental agreement with HFS. Dimas is responsible for ensuring that DHS conducts Medicaid eligibility and service level determinations in accordance with policies and procedures established by HFS. Dimas is sued in his official capacity.

## FACTUAL ALLEGATIONS

### Overview of The Medicaid Act

18.     Title XIX of the Social Security Act, known as the Medicaid Act, provides medical assistance to individuals who cannot afford to pay for needed health care. 42 U.S.C. § 1396. The program is jointly financed by the federal and state governments, and administered by the states. The states decide eligibility, types and ranges of services, payment level for services, and administrative and operative procedures. In order to receive matching federal financial funds, states must agree to comply with the applicable federal Medicaid law and regulations.

19.     At the federal level, the Medicaid program is administered by the Centers for Medicaid and Medicare Services ("CMS"). At the state level, the Medicaid program is administered by a state agency, which is charged with establishing and complying with a state's Medicaid plan ("State Plan") that, in turn, must comply with the provisions of the Medicaid Act and implementing regulations. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. §§ 430.10 & 431.10.

120481.0007/6896892.10

20.     The State Plan must provide for "making medical assistance available" to "all individuals" meeting specified eligibility standards, *i.e.*, Medicaid beneficiaries. 42 U.S.C. § 1396a(a)(10)(A). This includes both funding, as well as the care and services themselves. *Id.*, § 1396d(a). Among the "medical assistance" that each state's Medicaid program must provide is institutional care, including skilled nursing services provided by NFs. *Id.*, § 1396d(a)(4).

21.     A state may also apply for a waiver from CMS so that it may include in its State Plan programs (a "Waiver Program") to provide medical assistance to Medicaid beneficiaries for home or community-based services as an alternative to institutional care, including services provided by SLFs. 42 U.S.C. § 1396n(c)(1).

22.     The Medicaid Act requires that the State Plan "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

23.     Federal regulations specifically define "reasonable promptness" in the context of Medicaid eligibility determinations. "[T]he determination of eligibility for any applicant may not exceed . . . [n]inety days for applicants who apply for Medicaid on the basis of disability; and . . . [f]orty-five days for all other applicants." 42 C.F.R. § 435.912(c)(3).

24.     Federal regulations do not permit or excuse delay caused by a state's administrative processes. States must "afford an individual wishing to do so the opportunity to apply for Medicaid without delay," 42 C.F.R. § 435.906, and must "[f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).

25.     This "reasonable promptness" mandate and corresponding eligibility determination deadlines are compulsory for all Medicaid programs, and cannot be waived as part of a state's Medicaid Waiver Program.  *See* 42 U.S.C. § 1396n(c)(3); 42 C.F.R. § 430.25(d)(2).

26.     Similarly, even if an individual already has been determined eligible for and/or receives some Medicaid benefits, this "reasonable promptness" mandate and corresponding eligibility determination deadlines apply to applications and payment for, and provision of additional Medicaid benefits, such as long-term care Medicaid benefits.  *See, e.g.*, *McMillan v. McCrimon*, 807 F. Supp. 475 (C.D. Ill. 1992).

27.     The Medicaid Act, as well as constitutional due process, requires states to provide individuals with notice and an opportunity for a fair hearing if their application is denied or not acted on with reasonable promptness.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.220(a)(1).

28.     Once an individual is determined eligible for Medicaid benefits, the Medicaid Act and its implementing regulations expressly require states to pay 90% of claims for payment made for services provided by participating NFs and SLFs within 30 days of receipt of such claims, and 99% of such claims within 90 days of receipt, and requires that states "pay all other claims within 12 months of the date of receipt."  42 U.S.C. § 1396a(a)(37); 42 C.F.R. § 447.45(d)(2), (3) & (4).

29.     Finally, the Medicaid Act and its implementing regulations provide that the responsible state agency "must . . . [c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible."  42 C.F.R. § 435.930(b).

<u>Overview of the ADA and the Rehabilitation Act</u>

30.     The ADA's purpose and goal is "the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  In enacting the ADA, Congress stated

7

that "historically, society has tended to isolate and segregate individuals with disabilities" and that such discrimination continues "to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

31.     Title II of the ADA, which applies to state Medicaid programs, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

32.     The ADA's regulations provide that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The "most integrated setting appropriate" is, in turn, defined as "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A, p. 450.

33.     The Rehabilitation Act applies to programs receiving federal financial assistance, including state Medicaid programs, and provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

34.     The Rehabilitation Act's regulations provide that "[r]ecipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d).

35.     The foregoing provisions of the ADA and Rehabilitation Act, and their regulations, are construed consistently, and require state Medicaid programs to provide non-institutional and non-segregated treatment to qualified individuals with disabilities who want a

8

community-based and/or integrated treatment setting, if treatment in that setting is appropriate and the placement can be reasonably accommodated. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

<u>The Departments' Role in Medicaid Eligibility Determinations for Long-Term Care</u>

36.     The State of Illinois participates in the Medicaid program.   In addition to providing mandatory medical assistance to individuals eligible for long-term care in participating NFs, Illinois also offers a home and community-based Waiver Program to provide long-term care in participating SLFs. *See generally*, 305 ILCS 5/Article 5.

37.     The Illinois Department of Healthcare and Family Services is the designated state agency that administers Illinois's Medicaid programs.   HFS is responsible for determining whether individuals are financially eligible for Illinois's Medicaid programs, including long-term care in NFs and SLFs.   Defendant Norwood is the Director of HFS, and is responsible for ensuring that HFS's Medicaid programs strictly comply with the requirements of and deadlines related to the eligibility determination provisions of the Medicaid Act, as well as the disparate treatment and reasonable accommodation provisions of ADA and the Rehabilitation Act.   The function of determining Medicaid eligibility on behalf of HFS has been delegated to DHS. Defendant Dimas is the Secretary of DHS, and is responsible for ensuring that DHS conducts Medicaid eligibility determinations in accordance with policies and procedures established by HFS to meet the legal requirements of the Medicaid Act, ADA and Rehabilitation Act.

38.     In general, to be eligible for long-term care Medicaid benefits, applicants must apply to receive basic Medicaid public assistance (Aid to the Aged, Blind or Disabled (AABD)) or currently receive AABD, and must separately apply for long-term care Medicaid benefits, often through the assistance of a NF or SLF where the applicant resides or will reside.   This

120481.0007/6896892.10

long-term care application requires the applicant to provide additional financial information. An applicant's financial eligibility for long-term care Medicaid benefits is determined by specific criteria set forth by regulation. 89 Ill. Adm. Code §§ 120.61; 120.64(k); 120.308 *et seq.* (Subpart H).

39.     Consistent with the Medicaid Act's "reasonable promptness" requirement and its eligibility determination deadlines, Illinois law requires the Departments to inform every Medicaid applicant by written notice of their determination of eligibility for long-term care Medicaid benefits within forty-five (45) days from the date of application, or, if the individual is seeking to qualify on the basis of disability, within sixty (60) days from the date of application (a deadline even shorter than the federal standard). 89 Ill. Adm. Code § 110.20(b).

40.     Illinois regulations define an application as a signed or electronically signed request that has been completed to the best of the applicant's knowledge and belief, and define the date of application as "the business day an application with a name, address and proper signature or signatures is received" by the Departments. 89 Ill. Adm. Code § 110.10(a), (f).

41.     Illinois law provides that the Departments "shall promptly, upon receipt of an application make the necessary investigation . . . for determining the eligibility of the applicant for aid," 305 ILCS 5/11-5, and "shall assist applicants . . . to properly complete their applications," including "securing evidence in support of their eligibility." 305 ILCS 5/11-4.

42.     The Departments must notify the applicant of its eligibility determination in writing within 10 days of a decision. 305 ILCS 5/11-6. If the applicant resides in a NF or SLF, the Departments must also send notice of its determination to the facility. *Id.*

43.     If an application is denied, the notice must set forth a clear statement of the reason and reference the statute, rule or policy provision authorizing the denial, and a statement defining

the applicant's right to appeal. 305 ILCS 5/11-6; 89 Ill. Adm. Code § 102.70(c); 89 Ill. Adm. Code § 102.80. The Departments must also afford individuals a right to appeal if it fails "to act on an application within the mandated time period." 89 Ill. Adm. Code § 102.80(a)(2).

44.     Under no circumstances, however, may an application be denied solely to meet an application-processing deadline. 305 ILCS 5/11-6.

<u>The Departments' Failure To Determine Eligibility With Reasonable Promptness and To Reasonably Accommodate Applicants With A Disability</u>

45.     Due to the imposition of unnecessary conditions to eligibility, inadequate staffing, mismanagement, improper allocation of administrative resources and poor oversight, the Departments have systemically and continuously failed to satisfy their obligation to determine eligibility for long-term care Medicaid benefits, and then pay for such benefits within the compulsory deadlines imposed by the Medicaid Act.

46.     This violation of the Medicaid Act's "reasonable promptness" requirement has persisted for many years and is well-known to Illinois legislators and officials. In 2013, in an effort to "achieve federally established timeframes for eligibility determinations," the legislature instructed the Departments (along with the state Department on Aging) to jointly create an "expedited" eligibility determination and enrollment system for long-term care Medicaid benefits. *See* 305 ILCS 5/11-5.4.

47.     Even though the Medicaid Act and its regulations require the Departments to make eligibility determinations within 45 days from the date of application in non-disability cases (and state law requires them to make determinations within 60 days in disability cases), the goal of the so-called "expedited" system was "to reduce long-term care determinations to 90 days or fewer[.]" *See* 305 ILCS 5/11-5.4(a).

11

48. Notwithstanding its moniker, the system has proven to be anything but "expedited." The Departments regularly publish statistics showing that, each month, hundreds of applications for long-term care Medicaid benefits remain pending beyond the deadlines imposed by the Medicaid Act. *See* https://www.illinois.gov/hfs/MedicalProviders/ltss/ltc/Pages/default.aspx ("Current State of LTC Determinations"). As of April 3, 2017, over 3,500 applications remained pending past 45 days and over 2,000 remained pending past 90 days. *Id.* (Table 1). Total pending applications over 90 days have increased nearly 7% since January alone. *Id.* (Notes, Table 1(c)). Documents obtained from DHS reveal that delay in processing long-term care Medicaid applications has increased steadily over the last several years.

49. In some cases, the Departments fail to even acknowledge receipt of an application for long-term care Medicaid benefits until beyond the relevant deadline for determination. In other cases, the Departments delay determination based on a purported need for additional documentation, often seeking documents that were already submitted with the original application or in response to a prior request for information, sometimes setting arbitrary deadlines that either have already passed or cannot be met (as when, for example, documents must be obtained from third-party financial institutions or the like). The Departments often justify the delay, and/or application denials, with their own repeated, duplicative and unnecessary requests for additional documents or referral to HFS's Office of Inspector General for further inquiry.

50. As a result of this delay in the determination of eligibility for long-term care Medicaid benefits, Class Members currently receiving home-based or hospital care may be denied admission to participating NFs and SLFs, and are denied their right to receive necessary

nursing care, medical services, prescription drug benefits and other public assistance in an integrated community setting. Similarly, as a result of this delay in the determination of eligibility for long-term care Medicaid benefits, Class Members already admitted to and/or residing in participating NFs and SLFs are unable to fully pay for the long-term care and services they receive, and are subject to debt they otherwise would not incur and the risk of discharge if they are ineligible.

51.     Moreover, for Class Members already eligible for and enrolled in Illinois's Medicaid programs and receiving medical services, prescription drug benefits or other public assistance, application for long-term care Medicaid benefits may result in a temporary suspension or termination of those existing benefits pending the outcome of the application. For instance, if the Departments request additional documentation and set a deadline that has already passed by the time the applicant receives the notice, the Departments may suspend or terminate the applicant's existing Medicaid benefits pending the applicant's successful petition to reopen the application or contest the impossible deadline. When this occurs, Class Members are unable to pay for or otherwise obtain needed medical services, prescription drug benefits and other public assistance.

52.     Finally, even after the Departments determine Class Members to be eligible for long-term care Medicaid benefits, the Departments do not immediately update their systems to classify them as "admitted" into the long-term care facility in which they already reside. The time to complete this purely administrative process, over which neither the Class Members nor their NFs and SLFs have any control, can last for six months or more. The Departments' statistics show that, as of April 3, 2017, more than 3,300 Class Members have been waiting for over 90 days for the Departments to deem them "admitted" to their facilities, and over 1,500

13

have been waiting more than 6 months. For 2,900 Class Members pending eligibility determinations or "admission" for over 90 days, the Departments admit that the problem is "Delay                    with                    State."                                          *See* https://www.illinois.gov/hfs/MedicalProviders/ltss/ltc/Pages/default.aspx ("Current State of LTC Determinations," Tables 1 & 2).

53.     Added to the unlawful delay in determining long-term care Medicaid eligibility in the first instance, this additional delay often means that Class Members receive NF and SLF services for more than a year-and-a-half before the Departments pay for those services. During this period, the NFs and SLFs at which these Class Members reside cannot submit claims or receive payment for the long-term care, medical services, prescription drug benefits and other public assistance they provide, thereby further violating the Class Members' entitlement to Medicaid benefits with reasonable promptness and the Medicaid Act's prompt pay provisions.

<u>Impact on Named Plaintiffs</u>

54.     Plaintiff Koss applied to DHS for Medicaid medical and long-term care benefits first in August of 2015. When that application was denied in September of 2015 she was allowed to reopen the application that same month by submitting allegedly missing documentation, which she did. To this day she has never received a determination on the application she submitted nearly 20 months ago. The SLF where she has resided since August of 2015 remains unpaid. Additionally, Ms. Koss's other healthcare providers including her ophthalmologist remained unpaid and would not treat her because she had not been deemed eligible for even medical benefits, resulting in delayed treatment and the permanent loss of Ms. Koss's eyesight. Desperate and in failing health, Ms. Koss filed a new application in June 2016. In July 2016 DHS deemed her eligible for Medicaid *medical* benefits retroactive to May 2016.

However, as of today, some 20 months after her first application and 10 months after her second, there has been no determination as to her eligibility for long-term care benefits and her SLF remains unpaid for the care it has provided to Ms. Koss since August 2015.

55.     Plaintiff Wente applied to DHS for long-term care Medicaid benefits in October 2016.  In November and December 2016 and February 2017, DHS requested Ms. Wente to submit additional information (much of which had been previously submitted), which she did. Neither Ms. Wente nor her NF has received any written communication from HFS or DHS regarding the determination of Ms. Wente's application.  Due to HFS's failure to promptly process Ms. Wente's application and pay long-term care Medicaid benefits to which she may be eligible, she has been unable to fully pay for the nursing care she has received or for other medical services such as ambulance bills and prescription drug co-payments.

56.     Plaintiff Small applied for long-term care Medicaid benefits in or around late December 2015 or early January 2016 by submitting the approved application HFS form to the appropriate DHS office.  DHS requested Ms. Small submit additional information in April 2016, which was done in or around June 2016.  In December 2016, DHS notified the NF by telephone that Ms. Small's application had been denied.  Neither Ms. Small nor her NF has received any written communication from HFS or DHS regarding the determination of Ms. Small's application.  Due to HFS's failure to promptly process Ms. Small's application and pay long-term care Medicaid benefits to which she may be eligible, she has been unable to fully pay for the nursing care she has received or for her prescription drugs.

57.     Plaintiff Harris applied to DHS for long-term care Medicaid benefits in September of 2015.  In October and again in December of 2015 DHS requested that Ms. Harris submit additional information, which she did timely.  Nearly 6 months after she submitted her

15

application, her request for Medicaid medical and long term care services was approved by DHS in February 2016. However, DHS did not complete its processing of Harris's benefits by acknowledging that she has been admitted to a NF to receive Medicaid-funded services and updating its records accordingly. As a result, Ms. Harris's long-term care provider cannot submit claims to HFS for the nursing care and other medical assistance it has been continuously providing to Ms. Harris since August 2015. To date, Ms. Harris is still classified by DHS as "pending admission" for long-term care services. Despite the approval of Ms. Harris's application for Medicaid coverage, HFS has not yet paid any portion of the charges for nursing services that Ms. Harris has been receiving at her NF since August 2015.

58. Plaintiff Christman applied to DHS for long-term care and other Medicaid benefits in September 2016. In January and February 2017, DHS requested Ms. Christman and her son to submit additional information (some of which Ms. Christman had already submitted), which they did. Ms. Christman's application for long-term care Medicaid benefits was finally approved on April 7, 2017—over 180 days after she applied—but DHS has not completed its processing of her benefits by acknowledging that she has been "admitted" to the SLF at which she resides and updating its records accordingly. As a result, her SLF still cannot submit claims to HFS for the long-term care services it has been providing to her since September 2016. At this time, Ms. Christman remains classified by DHS as "pending admission" for long-term care services. Notwithstanding the approval of her application for Medicaid coverage, HFS still has not paid for any of the long-term care services that Ms. Christman has been receiving at her SLF since September 2016. During the time when Ms. Christman was waiting for a decision on her application, HFS's failure to promptly process her application and pay long-term care Medicaid benefits for which she has since been found eligible, caused her to be denied timely access to

crucial medical services including routine physician appointments and prescription drugs. She has also been unable to fully pay for supportive living care services she has received, and that continues to be the case due to HFS's failure to deem her "admitted" to her SLF and pay long-term care Medicaid benefits to which she is entitled.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure.

60.     <u>Class Definition</u>.  Plaintiffs seek certification of two classes.  The first class, referred to as the "LTC Medicaid Pendings Class" is defined as:

> All individuals who on or after February 1, 2015, have applied to receive long-term care Medicaid benefits from the State of Illinois, and have not received a final eligibility determination or a notice of an opportunity for a hearing within 45 days of the date of application in non-disability cases or 90 days in disability cases.

The second class, referred to as the "LTC Admit Pendings Class" is defined as:

> All individuals who on or after February 1, 2015, have been determined eligible to receive long-term care Medicaid benefits from the State of Illinois, but are still waiting to be deemed "admitted" to a long-term care facility.

61.     <u>Numerosity</u>.  The precise size of the class is unknown by Plaintiffs, but periodic reports published by HFS pursuant to 305 ILCS 5/11-5.4 show that hundreds of individuals have applications for long-term care Medicaid benefits pending for 45 days or more, almost all because of delays by the Departments.  Joinder would be impracticable.

62.     <u>Common Issues of Law and Fact</u>.  The named Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative Class Members. Plaintiffs and Class Members are individuals who seek admission to or are residents of

participating NFs and SLFs and, as a condition to receipt of long-term care Medicaid benefits (which, itself, may be a condition to admission to a NF or SLF), must apply to HFS and/or its delegate DHS for a determination of eligibility for such benefits. Plaintiffs and the proposed class have been subject to unlawful and unreasonable delays by the Departments in the determination of their eligibility for and payment of long-term care Medicaid benefits. And, even after they have been determined eligible, HFS has subjected Plaintiffs and Class Members to unreasonable delays in admitting them into the long-term care Medicaid program and paying their Medicaid benefits.

      a.      Questions of fact common to the class includes, but are not limited to, (a) whether the Departments failed to determine the eligibility of Class Members for, or make payments of, long-term Medicaid benefits with reasonable promptness; (b) whether the Departments failed to determine the eligibility of Class Members for long-term care Medicaid benefits, or provide them an opportunity for a hearing regarding such failure, within 45 days of the date of application in non-disability cases, or 90 days in disability cases; (c) whether, for Class Members determined to be eligible for long-term care Medicaid benefits, the Departments failed to act with reasonable promptness and/or within the Medicaid Act's prompt claims payment deadlines, by delaying or refusing to deem Class Members admitted to their long-term care facility so claims may be submitted and paid for the Medicaid benefits to which they are entitled; and (d) whether the Departments' failure to determine the eligibility of Class Members for, or make payments of, long-term care Medicaid benefits resulted in harm to Class Members that can be redressed through appropriate injunctive and/or declaratory relief.

      b.      Questions of law common to the class includes, but are not limited to, (a) whether the Departments' failure to determine Class Members' eligibility for, or to make

payments of or otherwise provide, long-term care Medicaid benefits violates 42 U.S.C. § 1396a(a)(8) and its implementing regulations; (b) whether the Departments' failure to provide Class Members an opportunity to receive a fair hearing after their eligibility for Medicaid benefits is not acted upon with reasonable promptness violates 42 U.S.C. § 1396a(a)(3) and/or the Due Process Clause; (c) whether, for Class Members determined to be eligible for long-term care Medicaid benefits, the Departments' delay and/or refusal to admit deem Class Members admitted to their long-term care facility so claims may be submitted and paid for the Medicaid benefits to which they are entitled violates 42 U.S.C. § 1396a(a)(37) and 42 C.F.R. § 45(d); (d) for those Class Members with a disability, whether the Departments' delay in determining Class Members' eligibility for long-term care Medicaid benefits violates the ADA and the Rehabilitation Act by denying them benefits on the basis of disability, failing to reasonably accommodate their disabilities and/or failing to provide them public assistance in the most integrated setting possible, and (e) whether injunctive and declaratory relief is appropriate and, if so, what the terms of such relief should be.

63.     Typicality of Claims and Defenses.   The named Plaintiffs raise claims that are typical of those asserted on behalf of the class.  Because the Plaintiffs and the proposed class challenge a common set of state policies, practices and violations of the law, it is anticipated that Defendants will assert similar defenses as to all of the named Plaintiffs and Class Members.

64.     Adequate Representation of Class.  Plaintiffs will fairly and adequately protect the interests of the Class Members.  They are represented by Robert H. Farley, Jr. and attorneys from Lane Powell PC, both of whom have experience in complex class action litigation involving health care, Medicaid and civil rights law.  Counsel have the resources, expertise and experience to prosecute this action.  Counsel know of no conflict among members of the class.

19

65. <u>Appropriateness of Declaratory and Injunctive Relief under Rule 23(b)(1) and/or Rule 23(b)(2)</u>. Separate suits by Class Members against Norwood, in her capacity as Director of HFS, and Dimas, in his capacity as Secretary of DHS, would create a risk of inconsistent or varying adjudications with respect to individual Class Members that could establish incompatible standards of conduct concerning the determination of eligibility for, enrollment in programs providing, and payment of long-term care Medicaid benefits. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1). Moreover, HFS, by and through Norwood, and DHS, by and through Dimas, have acted on grounds generally applicable to all Class Members concerning the determination of eligibility for, enrollment in programs providing, and payment of long-term care Medicaid benefits, rendering declaratory and injunctive relief appropriate for the entire class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

<strong><u>CLAIMS</u></strong>

<strong>FIRST CAUSE OF ACTION</strong>

<strong>Medicaid Act, 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 912(c)(3)</strong>

66. Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

67. The Medicaid Act requires the Departments to "provide that all individuals wishing to make application for medical assistance under the [Illinois State Plan] shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

68. Federal regulations require the Departments to implement § 1396a(a)(8)'s "reasonable promptness" requirement by "[f]urnish[ing] Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures" and, in no event, may the

determination for eligibility take longer than 45 days unless the basis for eligibility is a disability, in which case the determination must happen within 90 days. 42 C.F.R. §§ 435.930(a), .912(c)(3).

69.     The Departments, by and through Norwood and Dimas acting in their official capacities, knowingly and repeatedly failed to satisfy their duty to determine Plaintiffs' and Class Members' eligibility for long-term care Medicaid benefits with reasonable promptness, and failed to adhere to their duty to pay or otherwise provide long-term care Medicaid benefits to (or for the benefit of) eligible Plaintiffs and Class Members, violating Plaintiffs' and Class Members' rights under 42 U.S.C. § 1396a(a)(8) and its implementing regulations.

70.     As a direct and proximate result of these violations, Plaintiffs and Class Members have been harmed and are entitled to relief for the deprivation of their federal statutory rights under the color of state law, through 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

### Medicaid Act, 42 U.S.C. § 1396a(a)(3)

71.     Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

72.     The Medicaid Act requires the Departments to "provide for granting an opportunity for a fair hearing . . . to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

73.     The Departments, by and through Norwood and Dimas acting in their official capacities, knowingly and repeatedly failed to satisfy their duty to provide Plaintiffs and Class Members with a notice affording them the opportunity for a fair hearing when they did not

determine eligibility for, or make payments of, long-term care Medicaid benefits with reasonable promptness, violating Plaintiffs' and Class Members' rights under 42 U.S.C. § 1396a(a)(3).

74. As a direct and proximate result of these violations, Plaintiffs and Class Members have been harmed and are entitled to relief for the deprivation of their federal statutory rights under the color of state law, through 42 U.S.C. § 1983.

120481.0007/6896892.10

## THIRD CAUSE OF ACTION

### Medicaid Act, 42 U.S.C. § 1396a(a)(37); 42 C.F.R. § 45(d)

75.     Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

76.     The Medicaid Act requires participating NFs and SLFs to submit claims to HFS within 12 months from the date of service provided Medicaid beneficiaries, 42 C.F.R. § 45(d)(1), and, in return, requires HFS to pay for those services no later than 12 months from the date of receipt of the claim.  42 U.S.C. § 1396a(a)(37) 42 C.F.R. § 45(d)(4).

77.     HFS, by and through Norwood acting in her official capacity, knowingly and repeatedly failed to satisfy its obligation to accept and pay claims for long-term care Medicaid benefits provided to eligible Class Members within 12 months, violating Plaintiffs' and Class Members' rights under 42 U.S.C. § 1396a(a)(37) and 42 C.F.R. § 45(d).

78.     As a direct and proximate result of these violations, Plaintiffs and Class Members have been harmed and are entitled to relief for the deprivation of their federal statutory rights under the color of state law, through 42 U.S.C. § 1983

## FOURTH CAUSE OF ACTION

### Due Process Clause

79.     Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

80.     The Departments' policy and practice of failing or refusing to provide a fair hearing when they exceed the time permitted by law for a determination of eligibility for or provision of long-term care Medicaid benefits violates Plaintiffs' and Class Members' rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

120481.0007/6896892.10

81.     As a direct and proximate result of these violations, Plaintiffs and Class Members have suffered losses and are entitled to relief for the deprivation of their constitutional rights under the color of state law, through 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION

### ADA, 42 U.S.C. § 12132; The Rehabilitation Act, 29 U.S.C. § 794(a)

82.     Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

83.     The Plaintiffs and Class Members are qualified individuals with a disability within the meaning of Title II of the ADA and under Section 504 of the Rehabilitation Act.

84.     The Illinois Department of Healthcare and Family Services of which Defendant Norwood is Director and the Illinois Department of Human Services of which Defendant Dimas is Director each constitute a "public entity" within the meaning of Title II of the ADA.

85.     The Illinois Department of Healthcare and Family Services and Illinois Department of Human Services are recipients of federal funds under the Rehabilitation Act.

86.     The ADA and the Rehabilitation Act prohibit the Departments from discriminating in the funding or provision of long-term care Medicaid benefits on the basis of disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The Departments' delay in determining Class Members' eligibility for long-term care Medicaid benefits on the basis of disability, and paying such benefits to qualified Class Members with a disability, unlawfully discriminates against Class Members with disabilities, as the Class Members are being treated worse than persons with other disabilities.

87.     The ADA and the Rehabilitation Act require the Departments to provide Medicaid benefits to qualified Class Members with a disability in the most integrated setting

24

appropriate given the needs of the individual. 28 C.F.R. §§ 35.130(d), 41.51(d). The Departments' delay in determining the eligibility of qualified Class Members with a disability for long-term care Medicaid benefits results in prolonged and unwanted institutionalization or isolation at home, violating Class Members' rights to reasonable accommodation under the ADA and the Rehabilitation Act.

88.     As a direct and proximate result of these violations, Plaintiffs and Class Members have been harmed.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Assume jurisdiction over this action;

B.     Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1) and/or (b)(2) with respect to the proposed classes;

C.     Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that Norwood, in her official capacity as Director of HFS, and/or Dimas, in his official capacity as Secretary of DHS, violated and continue to violate Plaintiffs' and Class Members' rights under the Medicaid Act, Due Process clause, the Americans with Disabilities Act and the Rehabilitation Act;

D.     Preliminarily and permanently enjoin Norwood, in her official capacity as Director of HFS, and/or Dimas, in his official capacity as Secretary of DHS, from (i) failing and/or refusing to determine eligibility for or pay long-term care Medicaid benefits with reasonable promptness and within the deadlines set by the Medicaid Act and its implementing regulations, and (ii) refusing to provide notice and an opportunity for a fair hearing to any

120481.0007/6896892.10

individual whose application or claim for long-term care Medicaid benefits is not acted upon with reasonable promptness and within the deadlines set by the Medicaid Act;

E.     Order Norwood, in her official capacity as Director of HFS, and/or Dimas, in his official capacity as Secretary of DHS, to take affirmative steps to remedy these ongoing violations, including but not limited to, (i) promptly determining Plaintiffs' and Class Members' eligibility for long-term care Medicaid benefits, (ii) automatically treating Plaintiffs and Class Members as eligible for long-term care Medicaid benefits, and (iii) immediately admitting Plaintiffs and Class Members already determined to be eligible for such benefits into the long-term care Medicaid program, and then accepting and paying claims for long-term care services submitted by and on behalf of Plaintiffs and Class Members;

F.     Award Plaintiffs reasonable attorneys' fees and costs as provided by 42 U.S.C. § 1988; 42 U.S.C. § 12205; and/or 29 U.S.C. § 794a.

G.     Order such other, further or additional relief as the Court deems equitable, just and proper.

Respectfully submitted,

/s/ Robert H. Farley, Jr.
One of the Attorneys for the Plaintiffs

120481.0007/6896892.10

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd
1155 S. Washington Street
Naperville, IL 60540
630-369-0103
farleylaw@aol.com


Barbara J. Duffy
Ryan P. McBride
Jonathon Bashford
Lane Powell PC
1420 Fifth Ave. No. 4200
P O Box 91302
Seattle, WA 98111-9402
206-223-7000
duffyb@lanepowell.com
mcbrider@lanepowell.com
bashfordj@lanepowell.com

120481.0007/6896892.10