# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ALMA KOSS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 17 C 2762 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| FELICIA F. NORWOOD and | ) | |
| JAMES T. DIMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this putative statewide class action, plaintiffs Alma Koss, Wanda Wente, Mary Small, and Lessie Harris[1] bring claims for prospective injunctive and declaratory relief against the Secretary of the Illinois Department of Human Services ("DHS") and the Director of the Illinois Department of Healthcare and Family Services ("HFS") under 42 U.S.C. § 1983; the Medicaid Act, 42 U.S.C. § 1396a *et seq.*, and its implementing regulations; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794(a); and the Due Process Clause of the Fourteenth Amendment. Plaintiffs' claims arise from delays in processing and administering their applications to be determined eligible for long-term Medicaid benefits used to pay for the cost of their care in nursing facilities ("NFs") or Supportive Living Facilities ("SLFs"). Compl. ¶ 2, ECF No. 1. The court has three motions before it. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. Plaintiffs move for a preliminary injunction and to certify their proposed classes. *See* Fed. R. Civ. P. 23(a) and (b)(1) and (2). For the following

---

[1] The complaint also names Wanda Wente and Berta Christman as plaintiffs. ECF No. 1 ¶¶ 12, 15. Christman voluntarily dismissed her claims, ECF No. 20 at 1, and Wente passed away while this case was pending.

reasons, the court grants the motions in part and denies them in part. The court enters a preliminary injunction requiring defendants to presume that applicants for long-term care Medicaid benefits be presumptively eligible after the expiration of the deadlines to decide their applications set forth in governing federal regulations. *See* 42 C.F.R. § 435.912.

## I. BACKGROUND

### A. The Medicaid Act

Enacted in 1965 as an amendment to the Social Security Act of 1935, Medicaid is a joint federal-state program that provides medical assistance to low income individuals. *See* 42 U.S.C. § 1396 *et seq.* Under the program, "the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 969 (7th Cir. 2012) (quoting *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990)); *see also Steimel v. Wernert*, 823 F.3d 902, 907 (7th Cir. 2016). Although the federal government does not require states to participate in the Medicaid program, once they do, they "must comply with federal statutes and regulations." *Bertrand v. Maram*, No. 05-CV-0544, 2006 WL 2735494, at *1 (N.D. Ill. Sept. 25, 2006) (citing 42 U.S.C. § 1396a(a)(10)), *aff'd sub nom. Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452 (7th Cir. 2007); *accord Planned Parenthood of Ind.*, 699 F.3d at 962 (quoting *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003)); *see also*, *e.g.*, 42 C.F.R. §§ 440.210, 440.220 (listing mandatory services a participating state must provide to the "categorically needy" and "medically needy").

"To ensure compliance with federal rules, participating states must submit proposed Medicaid plans and any subsequent amendments to the Centers for Medicare and Medicaid Services ("CMS") for approval." *Planned Parenthood of Ind.*, 699 F.3d at 969 (citing *Douglas v.*

2

*Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012)). The Medicaid Act authorizes the federal Secretary of Health and Human Services to withhold funds from any state that does not comply with federal requirements. 42 U.S.C. §1396c; *Planned Parenthood of Ind.*, 699 F.3d at 969 (citations omitted).

Applicants for long-term care Medicaid benefits must first be receiving or be eligible for basic Medicaid benefits. They must also submit additional financial information showing that they meet eligibility criteria. *See* 89 Ill. Admin. Code §§ 120.61, 120.64(k); 120.308 *et seq.* (West 2018) (governing eligibility); 42 U.S.C. §§ 1396p, 1396r-5.

Plaintiffs invoke three provisions of the Medicaid Act which specify what a state's plan "must" contain. 42 U.S.C. § 1396a(a). The first two concern eligibility determinations. In Count I, plaintiffs cite 42 U.S.C. § 1396a(a)(8), which requires a plan to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." Under §1396a(a)(3), cited in Count II, a plan is required to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." To flesh those statutory provisions out, plaintiffs rely on 42 C.F.R. § 435.912, a federal regulation interpreting the Medicaid Act:

> [(c)](3) Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant may not exceed—
>
> (i) Ninety days for applicants who apply for Medicaid on the basis of disability; and
>
> (ii) Forty-five days for all other applicants.
>
> . . . .

> (e) The agency must determine eligibility within the standards except in unusual circumstances, for example—
>
> (1) When the agency cannot reach a decision because the applicant or an examining physician delays or fails to take a required action, or
>
> (2) When there is an administrative or other emergency beyond the agency's control.

42 C.F.R 435.§ 912(c)(3), (e); *see also* § 435.912(a).

Returning to statutory language, the Medicaid Act provision at issue in Count III concerns not applications for assistance but payments for Medicaid claims. It requires a plan to

> provide for claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program

42 U.S.C. § 1396a(a)(37).

As with the foregoing provisions of the Medicaid Act, plaintiffs invoke an implementing regulation. The regulation they cite requires payments, with exceptions no party contends apply here, to be made "within 12 months of the date of receipt." 42 C.F.R. §447.45(d)(4) (West 2018); *see also id.* § 447.45(d)(1)–(3) (setting shorter deadlines for certain categories of claims); § 447.45(d)(5) ("The date of receipt is the date the agency receives the claim, as indicated by its date stamp on the claim.").

**B. Factual Background**

The complaint alleges, and the evidence introduced with respect to the preliminary injunction motion shows, that receiving long-term care Medicaid benefits in Illinois is a two-step process. First, DHS makes an eligibility determination. A favorable eligibility determination does not start funds flowing to the applicant's NF or SLF, however. For payments to begin, the beneficiary must be processed as "admitted" in an HFS computer system called "MEDI." Decl. of Jane Blankenship ¶ 5, Sept. 1, 2017, ECF No. 47-2. Plaintiffs cite monthly DHS reports showing that thousands of applications remain pending in one of those two states—pending a decision on admission or deemed eligible but not yet admitted—for more than 90 days. *See* Long Term Care Report for SNF/SLF, ECF No. 9 Ex. A tbls. 1, 2 (as of Apr. 3, 2017).

When the complaint was filed, on April 12, 2017, plaintiffs ranged in age from 68 to 90 years old. Compl. ¶¶ 11–14. Each lived in an NF or SLF which participates in Illinois' Medicaid program. *Id.* Plaintiff Berta Christman has voluntarily dismissed her claims. ECF No. 20 at 1. The following paragraphs summarize the complaint's allegations regarding the individual plaintiffs except Christman.

Koss first applied for long-term care Medicaid benefits in August 2015. Compl. ¶ 54. She submitted allegedly missing documents the next month, and she had yet to receive a determination on her first application when the complaint was filed. *Id.* She filed a second application in June 2016. *Id.* In July 2016, DHS deemed her eligible for basic benefits retroactive to May 2016. *Id.* As a result, Koss alleges that the SLF at which she has lived since August 2015 has yet to be paid for the care it is providing her, as has her ophthalmologist. *Id.* Koss' ophthalmologist would not treat her due to the nonpayment, according to the complaint, and Koss became blind as a result. *Id.*

5

Wente applied for long-term care Medicaid benefits in October 2016. Compl. ¶ 55. Three times in the next five months DHS asked her to provide additional documents (many of which she alleges she had already provided). *Id.* She had not received a decision when the complaint was filed. *Id.* She alleges that she had not been able to pay fully for her the care she is receiving from the NF where she resides or pay for other medical expenses such as ambulance fees and medication copayments. *Id.*

Small submitted her application for long-term care Medicaid benefits in December 2015 or January 2016. Compl. ¶ 56. DHS asked for more information from Small in April 2016, which she provided in in June. *Id.* In December 2016, her NF was notified by phone that her application had been denied, but she has received no written communication from defendants regarding her application. *Id.* Small has been unable fully to pay for her prescription medication and the nursing care she is receiving. *Id.*

Harris applied for long-term care Medicaid benefits in September 2015. Compl. ¶ 57. DHS requested more documents in October and December 2015, and DHS approved her application nearly six months later in or around May 2016. *See id.* Nonetheless, DHS had yet to finish processing her application by properly updating its records to show her as admitted to the NF where she has been residing since August 2015. *Id.* The NF cannot get paid by Medicaid for the services it is providing to Harris as a result. *Id.* (alleging that her status was "pending admission" for long-term care services).

After the complaint and the pending motion for class certification were filed, Defendants processed the four named plaintiffs' applications and deemed them admitted to their facilities on their original application dates. *See* Decl. of Jeff Maddox ¶ 9, June 19, 2017, ECF No. 28-1 Ex. A (averring that DHS approved Wente's application on June 12, 2017); Decl. of Danielle Kinney

¶ 13, Aug. 25, 2017, ECF No. 47-1 Ex. A. (averring that Small's admission was processed on

July 19, 2017, with her admission date backdated to August 2015); Decl. Jane Blankenship ¶ 14,

Sept. 1, 2017, ECF No. 47-2 Ex. B (averring that Harris' admission was processed on June 12,

2017, and backdated to June 2015); *id.* ¶ 20 (averring that Koss' admission was processed on

August 30, 2017, and backdated to May 2015). Wente has since passed away. Pls.' Reply Supp.

Mot. to Certify 4, ECF No. 52 (giving no date).

**C. Procedural History and Similar Cases**

Plaintiffs moved for class certification two days after they filed their complaint.

*Compare* ECF No. 7, *with* ECF No. 1. The parties have agreed to forego a preliminary

injunction hearing and submit the motion for a decision on the papers.

Also, Judge Bucklo has thirteen cases brought by Illinois applicants and admittees

seeking long-term care Medicaid benefits before her. Defendants moved to transfer this action to

Judge Bucklo as related, *see* N.D. Ill. L.R. 40.4, but she denied the motion because she did not

have a putative statewide class before her and so the transfer would have interfered with the

prompt resolution of the cases before her, including an approaching preliminary injunction

hearing. *See* Minute Entry, ECF No. 64 at 1, *Doctors Nursing & Rehab. Ctr. v. Norwood*, 16-cv-

09837 (N.D. Ill. Aug. 18, 2017). Judge Bucklo has issued three opinions in these cases

addressing issues very similar to those raised here. *See Doctors Nursing & Rehab. Ctr., LLC v.*

*Norwood* ("*Doctors Nursing II*"), 2017 WL 3838031 (N.D. Ill. Sept. 1, 2017) (partially granting

motion for preliminary injunction); *Heritage Operations Grp., LLC v. Norwood*, 322 F.R.D. 321

(N.D. Ill. 2017) (granting healthcare provider's motion to certify a class narrower than the class

proposed here); *Doctors Nursing & Rehab. Ctr., LLC v. Norwood* ("*Doctors Nursing I*"), 2017

WL 2461544 (N.D. Ill. June 7, 2017) (denying defendants' motion to dismiss complaint for failure to state a claim).

## II. MOOTNESS

The court finds it prudent to address defendants' mootness argument first. *See, e.g.*, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1014, 1016 (7th Cir. 2014). As plaintiffs note, defendants have not moved separately to dismiss this action as moot, but they contend that class certification is inappropriate because the named plaintiffs' claims are moot. See ECF No. 47 at 8–9. Plaintiffs brief the question in their reply. Even without the back-and-forth briefing on mootness, the court would be obligated to raise the question on its own because mootness is a jurisdictional doctrine. *See, e.g.*, *Wernsing v. Thompson*, 423 F.3d 732, 743, 744–45 (7th Cir. 2005) (considering mootness because "not only may the federal courts police subject matter jurisdiction *sua sponte*, they must" (quoting *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002))).

"If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chapman v. 1st Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

Defendants say that the mootness analysis in another putative class action brought under § 1396A(a)(8), *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452 (7th Cir. 2007), requires denial of the motion for class certification and, the court assumes by extension, dismissal of this suit. In

*Bertrand*, two plaintiffs applied to be enrolled in Illinois' Medicaid program providing residential habilitation services for people with developmental disabilities. *Id.* at 453. Their applications were denied on the ground that they did not meet the program's eligibility criteria. *Id.* at 454. One of the plaintiffs, Christopher Bertrand, reapplied. *Id.* While the plaintiff's motion for class certification was pending, his second application met with success, and the state began providing services to him. *Id.*

The Seventh Circuit held that Bertrand's individual and class claims were moot because the district court denied his motion for class certification, and he did not challenge that ruling on appeal. *Id.* at 456 (emphasizing that "the suit never became a class action"). The *Bertrand* court reasoned as follows:

> In a handful of situations, exemplified by *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), and *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546–47 (7th Cir. 2003), class certification may follow the defendant's actual or attempted satisfaction of the would-be representative's demand; the Court explained in *Deposit Guaranty National Bank* that this proviso is essential to prevent defendants from buying off all potential class representatives by meeting their demands, one at a time, and thus preventing effectual relief to a larger class of victims. Nothing of the sort occurred here—and, to repeat, no class has been certified, so even if Bertrand *had* been furnished . . . services for strategic reasons this would not justify allowing him to continue litigating in his own name.

*Id.*

*Bertrand* controls the individual mootness questions here but not the separate question of whether this putative class action remains live despite the mootness of the named plaintiffs' claims. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980) ("A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class."). Plaintiffs' filing of the motion for

class certification here preceded the asserted satisfaction of the named plaintiffs' claims. Unlike in *Bertrand*, the named plaintiffs have not abandoned their efforts to obtain class certification. Because this court has not yet decided the motion for class certification, *Bertrand* is inapposite. *See Bertrand*, 495 F.3d at 456 (stressing twice that the district court denied class certification and that no party appealed that decision).

Instead, as *Bertrand* acknowledged, the following general rule governs in this case's current posture:

> [T]he mooting of the named plaintiff's claim in a class action by the defendants satisfying the claim does not moot the action so long as the case has been certified as a class action, or . . . so long as a motion for class certification has been made and not ruled on, unless . . . the movant has been dilatory. Otherwise the defendant could delay the action indefinitely by paying off each class representative in succession.

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 874 (7th Cir. 2012) (quoting *Primax Recoveries*, 324 F.3d at 546–47 (ellipses in original); *see also Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978). Plaintiffs can hardly be said to be dilatory; they moved for class certification two days after they filed their complaint and months before defendants took further action on their applications. ECF No. 7. It remains reasonable to believe that a live controversy exists between defendants and at least one member of the proposed class of thousands of individuals whose applications have been pending for more than 90 days. *See Geraghty*, 445 U.S. at 396 ("It is clear that the controversy over the validity of the Parole Release Guidelines is still a 'live' one between petitioners and at least some members of the class . . . ."); *see also* ECF No. 9 Ex. A, Tbl. 1. As a result, under the rule explained in *Primax*, each plaintiff retains her "interest in the case for purposes of [her] ability to serve . . . as a class representative." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014).

10

### III. MOTION TO DISMISS

Defendants move to dismiss the complaint in its entirety. The court first considers their contentions that the Medicaid Act provisions plaintiffs cite cannot be privately enforced via § 1983. Except as to the abandoned provision in Count III, the court determines that they can be. The court then considers defendants' challenges to the individual counts and dismisses plaintiffs' ADA and Rehabilitation Act claims.

### A. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*, *supra*). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56; *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Private Enforceability of Medicaid Act

11

Defendants contend that none of the Medicaid Act provisions plaintiffs cite in Counts I–

IV are privately enforceable. The Medicaid Act does not itself provide a statutory right of action

for the provisions plaintiffs cite, so the question becomes whether they are "rights, privileges, or

immunities" for which 42 U.S.C. § 1983 provides a vehicle for private enforcement. *See, e.g.*,

*BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820–21 (7th Cir. 2017); *Planned*

*Parenthood of Ind.*, supra, 699 F.3d at 968 (citing *Gonzaga University v. Doe*, 536 U.S. 273

(2002)). Three factors guide this inquiry: "(1) 'Congress must have intended that the provision in

question benefit the plaintiff'; (2) the asserted right must not be 'so vague and amorphous that its

enforcement would strain judicial competence'; and (3) 'the provision giving rise to the asserted

right must be couched in mandatory, rather than precatory, terms.'" *Planned Parenthood of Ind.*,

699 F.3d at 972–73 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)) (numbering in

*Planned Parenthood of Ind.*). Plaintiffs have persuaded the court these factors favor their

positions except on Count III.

1. <u>Counts I, II, and IV</u>

As defendants point out, the Seventh Circuit has not issued a binding decision on this

question. *O.B. v. Norwood* affirmed the entry of a preliminary injunction enforcing the

reasonable promptness provision of the Medicaid Act at issue here, § 1396a(8). 838 F.3d 837,

841 (7th Cir. 2016). The parties do not appear to have raised the § 1983 issue in *O.B.*, however,

so *O.B.* does not settle the question definitively any more than *Bertrand ex rel. Bertrand v.*

*Maram*, in which the Seventh Circuit "assume[d] that" § 1396a(a)(8) was privately enforceable

under 42 U.S.C. § 1983 because the parties did not brief the question and because it was not

jurisdictional. 495 F.3d 452, 457–58 (7th Cir. 2006) (citing *Bruggeman ex rel. Bruggeman v.*

*Blagojevich*, 324 F.3d 906, 910–11 (7th Cir. 2003), which made the same implicit assumption)

12

(explaining that the nonjurisdictional § 1983 question was not briefed).  Even so, the court in *BT Bourbonnais Care* found *O.B.*'s preliminary injunction ruling significant enough to be mentioned when reaching the conclusion that another Medicaid Act provision was privately enforceable under § 1983.  *See* 866 F.3d at 821.  In view of the use of *O.B.* to bolster a § 1983 analysis of the Medicaid Act, a clear reason to reject the Seventh Circuit's repeated assumption that § 1396a(a)(8) is privately enforceable is necessary.  *Id.*

Defendants offer none.  They cite two decisions of district courts outside the Seventh Circuit holding that the reasonable promptness provision at issue here, 42 U.S.C. § 1396a(a)(8), is not privately enforceable under § 1983.  The first of these cases, *Bio-Medical Applications of North Carolina Inc. v. Electronic Data Systems Corp.*, 412 F. Supp. 2d 549, 552-55 (E.D.N.C. 2006), "assum[ed] *arguendo* that individual rights have been created" by § 1396a(a)(8) but concluded that it did "not support a private cause of action under 42 U.S.C. § 1983 by Medicaid providers . . . ."  *Id.* at 554.  Here, the plaintiffs are not medical providers but people who applied for long-term care Medicaid benefits, so *Bio-Medical Applications*' reasoning does not speak to the situation presented in this case.  *See BT Bourbonnais Care*, 866 F.3d at 822.  Also, the Fourth Circuit has since held that § 1396a(a)(8) "gives rise to a right enforceable under § 1983."  *Doe v. Kidd*, 501 F.3d 348, 356 (4th Cir. 2007).  In defendants' second case, the district court found no rights-creating language in the reasonable promptness provision because, as the court saw it, § 1396a(a)(8) "merely places certain conditions upon a state seeking Medicaid funding."  *M.A.C. v. Betit*, 284 F. Supp. 2d.1298, 1307 (D. Utah 2003).  The Seventh Circuit recently scotched this notion, rejecting "the idea that plaintiffs are now flatly forbidden in section 1983 actions to rely on a statute passed pursuant to Congress's Spending Clause powers."  *BT Bourbonnais Care*, 866 F.3d at 820–21.

13

Further support comes from at least five circuits collected in Judge Bucklo's opinion in *Doctors Nursing I*, holding that the provisions of the Medicaid Act plaintiffs cite create privately enforceable rights. 2017 WL 2461544, at *6; *see Romano v. Greenstein*, 721 F.3d 373, 379 (5th Cir. 2013); *Doe v. Kidd*, 419 F. App'x 411, 416 (4th Cir. 2011), *reaff'g* 501 F.3d 348, 356–57 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 183 (3d Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). The court agrees with Judge Bucklo and the Fifth Circuit: "the statute and the accompanying regulations 'clarify the scope of the reasonable promptness duty.' Courts are therefore not left to guess what 42 U.S.C. § 1396a(a)(8) protects." *Doctors Nursing I*, 2017 WL 2461544, at *6 (quoting *Romano*, 721 F.3d at 379).

Additionally, plaintiffs cite two out-of-circuit cases holding that the fair-hearing provision cited in Counts II and IV, 42 U.S.C. § 1396a(a)(3), and its implementing regulations are privately enforceable via § 1983. *See Shakhnes v. Berlin*, 689 F.3d 244, 254–56 (2d Cir. 2012); *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1022–23 (D. Minn. 2016). Defendants cite no authority going the other way.[2] *See* Reply 5, ECF No. 36.

Like Judge Bucklo, this court finds these cases to be well-reasoned and persuasive, particularly in view of the Seventh Circuit's reliance on *Sabree* in *BT Bourbonnais Care*. *See BT Bourbonnais Care*, 866 F.3d at 822. The court therefore concludes that the Medicaid Act provisions cited in Counts I, II, and IV are privately enforceable under § 1983.

2. Count III

---

[2] Plaintiffs also bring a claim under the Fourteenth Amendment's Due Process Clause. Defendants develop no due process argument in their briefing, however, so the court does not address it further.

Unlike Counts I, II, and IV, plaintiffs have not shown that the prompt-payment provision on which they rely in Count III, 42 U.S.C. § 1396a(a)(37), or its implementing regulations are privately enforceable. *See* Compl. ¶ 77 (citing § 1396a(a)(37)). Plaintiffs initially read defendant's motion to dismiss as conceding the private-enforceability question. Resp. 5, ECF No. 35. Defendants disagree in their reply, asserting that they did so argue in their opening memorandum. Reply 6, ECF No. 36 (citing Mem. 7, ECF No. 28). Defendants correctly characterize their opening memorandum. *See* ECF No. 28 at 7 (arguing that "Plaintiffs are attempting to enforce an otherwise unenforceable federal regulation through an equally unenforceable (and inapplicable) federal statute"). And even if the memorandum had been ambiguous, plaintiffs sought and obtained leave to file a surreply but still did not address whether § 1396a(a)(37) is privately enforceable under § 1983. *See* ECF No. 43 at 1–3; *see also* Pls.' Supplemental Authority 1–2, ECF No. 51 (arguing only in support of claims under § 1396a(a)(8)).

To be sure, plaintiffs defend Count III on other grounds. *See* Resp. to Mot. to Dismiss 5–6, ECF No. 35. They argue that the complaint sufficiently alleges that nonpayment occurred and that the Seventh Circuit's decision in *Illinois Council on Long Term Care v. Bradley*, 957 F.2d 305, 308–09 (7th Cir. 1992), is distinguishable. *See* Resp. to Mot. to Dismiss 5–6. A trade organization representing the interests of nursing homes in Illinois brought *Bradley*, and the Seventh Circuit did not separately analyze whether § 1396a(a)(37) was enforceable through § 1983, though the court appeared to assume that it was. 957 F.2d at 305. What is more, § 1396a(a)(37) was not directly at issue in *Bradley*; another former Medicaid Act provision, referred to as the Boren Amendment, Pub. L. 96–499, § 962(a), 94 Stat. 2650 (formerly codified as amended at 42 U.S.C. § 1396a(a)(13)(A)) (repealed 1997), was. The opinion in *Bradley* cites

15

§ 1396a(a)(37) in its analysis of the Boren Amendment to "show[ ] that when Congress wanted to impose time limits for the payment of certain Medicaid claims, it did so explicitly." *Bradley*, 957 F.2d at 308. And finally, the Supreme Court subsequently answered the question of "whether the Boren Amendment . . . is enforceable in an action pursuant to § 1983" in the affirmative in a case brought by a healthcare provider. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 501–02 (1990).

Because they were brought by, or on behalf of, healthcare providers, neither *Wilder* nor *Bradley* even assumes the answer to the question Count III presents: may a Medicaid recipient residing in an NF or SLF bring a prompt-payment claim under § 1396a(a)(37) via § 1983 premised on delays in paying the facility at which she resides for the costs associated with her care? Unlike the prompt-payment issue under § 1396a(a)(8), no Seventh Circuit decision even assumes the answer to that question. *Cf. Bertrand*, *supra*, 495 F.3d at 457–58 (making assumption because it was made in earlier case and where issue not adequately briefed). Judge Bucklo concluded that the "reasonable promptness" language of § 1396a(a)(8) supported the plaintiffs' claims for prompt payment, but again, plaintiffs do not advance that argument here. *Compare Doctors Nursing I*, 2017 WL 2461544, at *7, *with* Compl. ¶ 77. Given the complexity of the *Blessing* analysis, the court declines to write on a slate left blank by plaintiffs. They, not this court, must defend their claims. *See, e.g.*, *Discount Inn, Inc. v. City of Chi.*, 72 F. Supp. 3d 930, 934–35 (N.D. Ill. 2014) (granting Rule 12(b)(6) motion to dismiss claims not briefed in the plaintiff's response under the rule that waiver occurs "where a party fails to develop arguments related to a discrete issue . . . [or] where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss") (citations omitted); *Collopy v. Dynamic Recovery Solutions, LLC*, No. 16 C 6777, 2017 WL 1321118, at *1 (N.D. Ill. Apr. 4,

16

2017) ("[B]ecause Collopy abandons her state law claim in her response to the motion to dismiss, the Court grants Defendants' motion to dismiss the ICFA claim.").

Count III is dismissed as abandoned.

## C. Failure to Determine Applications with "Reasonable Promptness" (Count I)

To say that the Medicaid Act provisions cited in Count I are privately enforceable does not necessarily mean that the complaint states a claim in that count. Recall that § 1396a(a)(8) requires a state plan to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." Defendants point out that no plaintiff alleges that she has been denied the opportunity to apply for long-term care Medicaid benefits, so, argue defendants, plaintiffs are really trying to enforce the specific deadlines in the implementing regulation, 42 C.F.R § 435.912(c)(3), rather than the statute. ECF No. 36 at 2–3.

Defendants read § 1396a(a)(8) as containing two, separate clauses that do not interact: (1) a first clause requiring only that an opportunity to apply be provided, and (2) a "reasonable promptness" clause that affects Medicaid services, not applications. *See id.* Defendants cite no case reading § 1396a(a)(8) as they do, *see id.*, and finding none, the court concludes that plaintiffs have stated a claim under §§ 1983 and 1396a(a)(8).

Defendants' proposed construction of § 1396a(a)(8) makes surplusage of its final four words—"assistance shall be furnished with reasonable promptness *to all eligible individuals*." (emphasis added). It is a "cardinal rule" of statutory construction that "effect shall be given to every clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)). Had Congress wanted to draw a line between applications and services and limit the "reasonable

17

promptness" requirement to the latter, there would have been no need for the final four words. Medicaid assistance is provided only to individuals who have applied for Medicaid benefits and have been deemed eligible under the state's plan. *See* 42 U.S.C. §§ 1396a(10), (34) (West 2018). Hence § 1396a(a)(8)'s reference to furnishing "assistance" already includes people deemed eligible for Medicaid benefits, so adding the phrase "all eligible individuals" must broaden the scope of the "reasonable promptness" requirement. The question is how far.

In 42 C.F.R. § 435.912(c)(3) and (e), the agency charged with administering the Medicaid Act interprets the "all eligible individuals" expander to reach applicants for services. At a minimum, this court owes that interpretation deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843 (1984), in the absence of a contrary argument from defendants. Under the *Chevron* doctrine, "when an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference if the statute is ambiguous and if the agency's interpretation is reasonable." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124 (2016). But giving deference does not mean that the regulation supplants the statute. The statute must be sufficiently ambiguous to warrant deference. *See id.* at 2124–25 (citations omitted). Nonetheless, it is still the statute that is being enforced. *See id.*

Plaintiffs therefore state claims upon which relief can be granted in Count I. Plaintiffs allege that they applied for long-term care Medicaid benefits and that they experienced delays ranging from 60 to 20 months. *See* Compl. ¶¶ 54–57. Noting that the regulations allow for certain reasonable delays, *see* 42 C.F.R. § 435.912(e), defendants argue that DHS' requests for documents described in the complaint defeat plaintiffs' claims given the more complex types of documents and inquiry that is required when determining eligibility for long-term care benefits.

18

*See id.*; Reply 4, ECF No. 36.  Plaintiffs allege, however, that DHS sometimes asked for documents they had already submitted.  *See* Compl. ¶¶ 54–57.  They also plead that the delay in making a determination after the last document was submitted often exceeded the time it took for DHS to request the first document.  *See id.*  With favorable inferences, these well-pleaded facts make it plausible that the delays plaintiffs experienced were unrelated to the need to review documents and otherwise unreasonable within the meaning of § 1396a(a)(8).  *See Doctors Nursing I*, 2017 WL 2461544, at *6–7.  The motion to dismiss Count I is denied.

**D. Counts II and IV**

Defendants briefly argue that the complaint does not make clear whether the plaintiffs received written notice of their right to a prompt hearing.  Mem. Supp. Mot. to Dismiss 6, ECF No. 28.  Koss alleges in the complaint that "[t]o this day she has never received a determination on the application she submitted nearly 20 months ago."  Compl. ¶ 54.  The complaint says that "[n]either Ms. Wente nor her NF has received any written communication from HFS or DHS regarding the determination of Ms. Wente's application."  *Id.* ¶ 55.  Small alleges the same thing, according to the complaint, and her NF was told by phone that her application was denied.  *Id.* ¶ 56 (not mentioning right to a hearing).  Harris pleads that her application was approved "[n]early six months after" she submitted it; she says nothing about communications in the interim.  *Id.* ¶ 57.  Drawing inferences favorable to plaintiffs, as the court must at this stage, those allegations embrace claims that HFS and DHS never sent any named plaintiff a notice of her right to a prompt hearing in the months her application was pending.  *Cf. Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH*, 185 F. Supp. 2d 897, 904–05 (N.D. Ill. 2002) (drawing inferences about communications described in the complaint favorable to plaintiff "in the

absence of evidence or allegations to the contrary"). The motion to dismiss Counts II and IV on this ground is therefore denied.

### E. ADA and Rehabilitation Act Claims (Count V)

Plaintiffs bring ADA and Rehabilitation Act claims in Count V. They treat the statutes as interchangeable in their briefing. With the exception of its standard of causation, a matter not presently at issue,[3] "the Rehabilitation Act incorporates the standards applicable to . . . the ADA." *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013) (citing *Silk v. City of Chicago*, 194 F.3d 788, 798 n.7 (7th Cir. 1999)) (other citations omitted) (analogizing to Title I). Defendants question whether the complaint states a claim of discrimination under both statutes. As that aspect of the two standards does not differ, the court determines, for present purposes, that Plaintiffs' ADA and Rehabilitation Act claims are "functionally identical." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)) (treating Title II and Rehabilitation Act claims together).

Defendants' first argument concerns the contents of the complaint. The complaint's introduction section states that all of the plaintiffs "are impoverished or disabled." Compl. ¶ 2. As defendants argue, the complaint also asserts that each named plaintiff is older than 70 and

---

[3] Section 504 of the Rehabilitation Act provides:
> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).
    The difference between the ADA and the Rehabilitation Act stems from Section 504's "solely by reason of" language. *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). To state a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, a plaintiff must plausibly "allege that (1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (alteration in original) (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2002)); *accord Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997) (citing *Knapp v. Nw. Univ.*, 101 F.3d 473, 478 (7th Cir. 1996)).

that each applied for long-term care Medicaid benefits, but it doesn't say specifically what disability affects each plaintiff or even that any plaintiff is a person with a disability. *See* Compl. ¶¶ 11–14, 54–57. Each could therefore be "impoverished" consistent with these allegations. Compl. ¶ 2.

The complaint does not give fair notice of what qualifying disability allegedly affects the plaintiffs. It must do so. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) (if a plaintiff is "not disabled within the meaning of the Act, she is not protected by its substantive anti-discrimination provisions"). Title II of the ADA includes a quite specific definition of a "qualified individual with a disability" it protects. 42 U.S.C. § 12131(2); *see also Brumfield*, 735 F.3d at 628 (contrasting this definition with Title I's definition). Because the existence of a disability is a legal conclusion under the ADA, the court must disregard the threadbare allegations of disability in the introductory paragraph of the complaint. It also cannot rely on the conclusory allegations that plaintiffs qualify for long-term nursing care without some well-pleaded facts to make those threadbare assertions plausible. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) ("[A]lthough the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.") (*citing Iqbal*, 556 U.S. at 678).

The complaint states that Koss lost her eyesight as a result of defendants' delays in processing her applications, Compl. ¶ 54, but her blindness constitutes the alleged effect of defendants' discrimination rather than the cause. *See id.*; *see also Iqbal*, 556 U.S. at 680 (finding generalized allegations of intentional conduct insufficient); *McReynolds*, 694 F.3d at 886 (holding, in race-discrimination case, that four sentences generally alleging employer's intentional discrimination did not state a claim). As plaintiffs offer no other theories, the

complaint fails to state an ADA claim, and Count V must be, and is, dismissed. *See Bradley v. Tool Masters*, No. 10 C 50194, 2010 WL 4875642, at *1 (N.D. Ill. Nov. 23, 2010) (holding complaint failed to state claim because it did not say what the plaintiff's disability was in even conclusory terms); *Crawford v. Countrywide Home Loans, Inc.*, No. 3:09CV247-PPS-CAN, 2010 WL 597942, at *3 (N.D. Ind. Feb. 12, 2010) (same).

## IV. MOTION TO CERTIFY CLASS

Plaintiffs move under Federal Rule of Civil Procedure 23(b)(2) to certify two classes:

> (1) [the "LTC Medicaid Pending Class":] All individuals who on or after February 1, 2015, have applied to receive long-term care Medicaid benefits from the State of Illinois, and have not received a final eligibility determination or a notice of an opportunity for a hearing within 45 days of the date of application in non-disability cases or 90 days in disability cases[; and]
>
> …
>
> (2) [the "LTC Admit Pending Class":] All individuals who on or after February 1, 2015, have been determined eligible to receive long-term care Medicaid benefits from the State of Illinois, but are still waiting to be deemed "admitted" to a long-term care facility.

Mem. Supp. Mot. to Certify 3, ECF No. 8 (numbering added; short forms as proposed by plaintiffs).

Judge Bucklo recently certified a very similar class in *Heritage Operations Group, LLC v. Norwood*, 322 F.R.D. 321 (N.D. Ill. 2017). The claims and classes in *Heritage Operations Group* and this case differ in only one substantive way. Plaintiffs here propose to certify a statewide class, while the class certified in *Heritage Operations Group* included approximately 300 individuals eligible for long-term care Medicaid benefits residing at facilities operated by the plaintiff. *See id.* at 321, 326.

22

This court agrees with much of Judge Bucklo's cogent analysis. The court parts company with it, however, on the question of adequacy of representation for the second class due to the manner in which Count III has been dismissed.

## A. Rule 23

To certify a class, this court "must find that each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b)." *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 490 (7th Cir. 2017) (quoting *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009)). Because he is the party seeking certification, plaintiff bears the burden to persuade the court by a preponderance of the evidence that his proposed class meets Rule 23's certification requirements. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015)) (plaintiff has burden to satisfy district court that Rule 23 is satisfied).

"Rule 23 does not set forth a mere pleading standard." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350). As a result, the court does not assume that all of the well-pleaded facts alleged in the complaint are true when deciding whether to certify a class. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–77 (7th Cir. 2001) (contrasting Rule 12(b)(6) and Rule 23 standards, holding that "[t]he proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it"). The court instead takes a "careful look" at the evidence submitted in support of and in opposition to the certification motion. *Kleen Products*, 831 F.3d at 922; *see also Dukes*, 564 U.S. at 350–51 (district court should satisfy itself "after a rigorous analysis, that the prerequisites of Rule 23(a) have been

23

satisfied" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  Indeed, the court

"must receive evidence and resolve factual disputes as necessary to decide whether certification

is appropriate."  *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 608 (N.D. Ill.

2017) (citing *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012)).

     Nevertheless, the court should delve no further into the merits than is necessary to decide

whether to certify a class.  *See Dukes*, 564 U.S. at 352 (considering merits issue on class

certification because, "[i]n this case, proof of commonality necessarily overlaps with

respondents' merits contention"); *Szabo*, 249 F.3d at 676 (holding that district court was required

to make "preliminary inquiry into the merits" because it was impossible to assess "the difficulties

likely to be encountered in the management of [the] class action").

     A motion to certify a class is no more a summary judgment proceeding than it is a motion

to dismiss the complaint for failure to state a claim upon which relief can be granted.  *See Driver*,

859 F.3d at 493 (fact that motion to certify a class is not an attack on the pleadings "does not

mean that the Rule 23 analysis is transformed into a summary judgment motion").  Nor should

class certification devolve "into a dress rehearsal for the trial on the merits."  *Balderrama-Baca*,

318 F.R.D. at 608 (quoting *Messner*, 669 F.3d at 811).  Going beyond the limited inquiry

required and addressing the merits before class certification puts the cart before the horse

because a motion to certify a class asks the court to decide, at the earliest preliminary stage

practicable, *see* Fed. R. Civ. P. 23(c)(1)(A), whether a class action is the proper way to resolve

the merits.  *See Dukes*, 564 U.S. at 351–52; *Driver*, 859 F.3d at 493; *Messner*, 669 F.3d at 811;

*Szabo*, 249 F.3d at 677 (stating that a district court should not say something like "I'm not going

to certify a class unless I think that the plaintiffs will prevail").

**B. Ascertainability**

Defendants raise threshold ascertainability challenges to the proposed class definitions. Rule 23 has long been interpreted as implicitly requiring a class to be defined "clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (collecting authority); *accord Elliott v. ITT Corp.*, 150 F.R.D. 569, 574 (N.D. Ill. 1992) (citing *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987)), *report and recommendation adopted* 150 B.R. 36, 39 (N.D. Ill. 1992). Courts sometimes use the shorthand term "ascertainability" to refer to this requirement. *E.g.*, *Mullins*, 795 F.3d at 657; *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *4–5 (N.D. Ill. Apr. 21, 2017).

Regarding the LTC Medicaid Pending Class, defendants point out that the proposed definition's use of the word "benefits" is vague; the regulations speak in terms of long-term care services for which there are eligibility groups. *See, e.g.*, 42 C.F.R. § 440.40(a) (West 2018) (defining "nursing facility services"). Plaintiffs' reply makes clear that they intend to refer to the applications to be eligible for long-term care Medicaid services, and any ambiguity in the proposed class definition about what kind of applications must be filed can be resolved with a specific reference to the Illinois statute or regulation authorizing applications to be submitted to DHS. *See Heritage Operations Grp.*, 322 F.R.D. at 326 (citing *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328 (N.D. Ill. 1995) and *Gomez*, 117 F.R.D. at 397 n.2) (modifying class to fix minor definitional issues).

Defendants also object to the inclusion of the 45- and 90-day deadlines tracking those in 42 C.F.R. § 435.912(c)(3) and the 12-month deadline in 42 C.F.R. § 447.45(d). Reprising their arguments on the merits, defendants contend that including those deadlines is inappropriate

25

because some delays result from factors federal regulations legitimately deem beyond DHS' control, *see* § 435.912(e), so the class will be "defined in a manner where an individual's claim for relief under the class may not exist."  Resp. to Mot. to Certify 5–8, ECF No. 47 (quotation on p. 8).  In a variant of this argument, defendants maintain that deciding who is in the class will require individual fact finding on the cause of each class member's delay.  *See id.* at 10–11.

Defendants wrongly assume that the class should be defined in such a way that whether someone is in the class depends on whether she has a good claim on the merits.  To the contrary, defining a class that way, as a "fail-safe" class, would be an error.  *See Messner*, 669 F.3d at 825 (describing "the problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  (citing *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011))).  Plaintiffs do not contend, (and how could they?) that delays of less than 45 days, 90 days, or 12 months violate federal law, so drawing lines where the regulations do makes sense as a way to define who will and will not be bound by the judgment.  Drawing that line does not foreclose later inquiry into whether delays in determining particular class members' applications fit in § 435.912(e)'s exception or any other defense defendants may have.  While it is possible that some class members will turn out not to have good claims, that possibility does not defeat certification, and nothing in the definition or evidence tells the court how many, and so it is not "apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."  *Messner*, 669 F.3d at 825 (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)) (explaining that this the proper test of definitional overbreadth).

26

**C. Numerosity**

On numerosity, defendants reiterate their position on the merits, contending that the number of class members cannot be readily determined without examining the reason for the delay of each application. Resp. to Mot. to Certify 12, ECF No. 47. Again, they misunderstand a Rule 23 requirement. To meet the numerosity requirement, plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009); *Heritage Operations Grp.*, 322 F.R.D. at 325; *see also Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 903–04 (N.D. Ill. 2017) (estimating class was so numerous as to make joinder impracticable because "[e]ven if only a small fraction of [the millions of] phone calls [at issue] fall into the class described by plaintiffs, the class surely meets the numerosity requirement"). Although there is no bright-line rule for exactly how many members are enough to establish a class, "[g]enerally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied." *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) (citations omitted); *see also Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)").

Plaintiffs point to monthly reports prepared by defendants showing that thousands of applicants remain pending for more than 45 or 90 days and thousands more applications deemed eligible await a transition to "admitted" status in defendants' MEDI system. *See* ECF No. 9 Ex. A, Tbls. 1, 2. While this evidence is now nearly a year old, *see id.* at 1 (dated Apr. 3, 2017),

defendants suggest no reason to think that the numbers have fallen, and if the trend since 2015 shown in a graph of pending applications since that time, *see* ECF No. 9 Ex. I at 1, has continued, the number of applications still numbers in the thousands. The merits of the potential class members' claims and the defenses to them is a separate issue. *See, e.g.*, *Snyder*, 258 F. Supp. 3d at 903–04 (focusing on number of phone calls placed, not whether the claim or defense of the class member was meritorious). All of the applications meet the class definition, so plaintiffs have proven numerosity.

## D. Commonality

Defendants' arguments about the need for separate, individualized inquiries fall, if anywhere, under Rule 23(a)'s commonality and typicality requirements; the court also considers them under Rule 23(b)(2). To satisfy Rule 23(a)(2), plaintiffs must show that "there are questions of law or fact common to the class." To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality requires that all of the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In their motion to certify, plaintiffs identify nine common questions to the LTC Medicaid Pending Class and five common to the LTC Admit Pending Class. ECF No. 7 at 3–5. As Judge Bucklo explained, plaintiffs' proposed class claims "'all derive from a single course of conduct' by the defendant—namely, defendant Norwood's failure to timely process applications and provide Medicaid benefits." *Heritage Operations Grp.*, 322 F.R.D. at 325 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). Further, "[d]efendant's alleged inaction is

'at the heart of [each] claim in the complaint . . . [and] is common to all the class members." *Id.*

(quoting *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997)) (all

alterations except first in original). Plaintiffs here identify still more common questions. The

answers to common factual questions about what, if any, policies and procedures defendants

have in place to comply with federal timeliness requirements would likely "generate common

answers apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350 (emphasis omitted)

(quotation omitted); *see also O.B.*, supra, 170 F. Supp. 3d at 1200 (finding common questions

included "whether 'treatment found to be medically necessary, and therefore mandatory for the

state to provide, is nevertheless unavailable in Illinois,' and 'whether there is system-wide failure

to provide services that already have been prescribed and that, therefore, the EPSDT program

requires the State to provide'"). Also apt to drive the resolution of all claims in one fell swoop

are answers to the common legal questions the parties raise about the meaning of the Medicaid

Act provisions and regulations at issue here such as whether the Medicaid Act provisions are

privately enforceable, a delay beyond the regulations' deadlines is ever permissible, and, if so, in

what circumstances. *See, e.g.*, *Holtzman v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) (explaining

that the yes-or-no question of whether fax qualified as advertising under statute is ordinarily a

question common to all of recipients of the fax).

By raising concerns about member-specific inquiries into the reasons for the delay of

each application, defendants talk past plaintiffs, arguing effectively the unique inquiries will

dwarf, or predominate over, the common questions. But because the plaintiffs here do not seek

to certify a damages class under Rule 23(b)(3), they need not show predominance. *See Riffey v.*

*Rauner*, 873 F.3d 558, 565 (7th Cir. 2017), *petition for cert. filed* (No. 17-981) (Jan. 10, 2018)

(applying predominance requirement because the plaintiff sought "to certify a class for monetary

damages"). Instead, to satisfy commonality, '[e]ven a single [common] question' will do." *Dukes*, 564 U.S. at 350 (alterations in original) (citation omitted). Plaintiffs have therefore carried their burden to show commonality by establishing that generating common answers to the questions discussed in the previous paragraph is likely to drive the resolution of this litigation. *See id.*

## E. Typicality

Rule 23(a)(3) declares that the plaintiffs' claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is closely related to commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). This is so because commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983)).

Typicality can exist "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Typicality requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Here, "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro*, 580 F.3d at 492 (stating that this is the focus of the typicality analysis) (citation omitted). The remaining named plaintiffs applied for Medicaid long-term benefits experienced delays in excess of the regulations' stated deadlines. *See* Compl. ¶¶ 54–57. They allege those delays violated federal law. *See id.* ¶ 1. Defendants concede that named plaintiffs' "claims may arise broadly out of the long-term care request process" but argue that the process is so unique to each applicant that none is "typical" as Rule 23(a)(3) uses the word. Resp. to Mot. to Certify 14, ECF No. 47 (citing no authority). In addition to the different causes of delays among the named plaintiffs, they also have all been approved for long-term care Medicaid benefits. These factual distinctions do not make their claims atypical, however. *See Heritage Operations Grp.*, 322 F.R.D. at 326 (citing *De La Fuente*, 713 F.2d at 232–33) (concluding that named plaintiff's claims were typical even though other class members applications to be deemed eligible for benefits were approved). Defendants ask the court to analyze typicality in terms of the differences' among the class members, but "[t]ypicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Arwa Chiropractic, P.C. v. Med–Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)) (second alteration in original) (other citation omitted).

## F. Adequacy

The last Rule 23(a) requirement calls upon plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis has to main components: (1) the adequacy of the named plaintiff's counsel;

and (2) the adequacy of representation provided in protecting the different, separate, and distinct interests of the class members. *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *see also Spano*, 633 F.3d at 586–87. To be an "adequate representative," the named plaintiff must not have "antagonistic or conflicting claims." *Retired Chi. Police Ass'n*, 7 F.3d at 598. The typicality and adequacy inquiries are linked: "typicality [ensures] the class representative's claims resemble the class' claims to an extent that an adequate representation can be expected." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 429 (N.D. Ill. 2003) (internal citation omitted). Defendants do not take issue with plaintiffs' experienced class counsel.

The dismissal, *supra*, of Count III on grounds relating to the development of the plaintiffs' argument makes the named plaintiffs inadequate representatives of a class of plaintiffs who wish to assert a similar prompt-payment claim. "Because a class action is an exception to the usual rule that only a named party before the court can have her claims adjudicated, the class representative must be part of the class and possess the same interest and suffer the same injury." *Riffey*, 873 F.3d 558, 563 (7th Cir. 2017) (quoting *Bell*, 800 F.3d at 373). And, as a general matter, "[w]hen the plaintiff's own claim is [finally] dismissed, he 'can no longer be the class representative. At that point either another class representative must be found or the suit is kaput.'" *Collins v. Vill. of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994)).

This case does not present a situation in which the purely legal defense to the claim asserted in Count III can be easily brushed aside at the certification stage. *See Hardy*, 39 F.3d at 770 (rejecting adequacy challenge because supposedly unique defense to representative's claim lacked merit). Here, the court has ruled that the named plaintiffs have not shown that 42 U.S.C. § 1396a(a)(37) is privately enforceable by failing to develop their arguments adequately. That

failure, the court thinks, leaves them situated differently enough to their class members to create sufficient doubt about whether they will represent the class's interests adequately to warrant denial of certification of the LTC Admit Pending Class.

Defendants' remaining argument reprises their contention that the mooting of plaintiffs' individual claims makes them inadequate representatives. *See* Resp. to Mot. to Certify 14–15, ECF No. 47. The court explained why that is not so. *See*, Part II, *supra*.

### G. Rule 23(b)(2)

Plaintiffs move for certification under Rule 23(b)(2) which permits a class to be sustained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, plaintiffs seek purely prospective injunctive and declaratory relief. A Rule 23(b)(2) class should be certified "when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015).

Defendants pitch their counterargument on familiar ground. They contend that certifying a class "risk[s]" an overbroad injunction that will not account adequately for delays beyond their control or caused by the need to gather the detailed financial information applicants for long-term Medicaid benefits must provide. Resp. to Mot. to Certify 15, ECF No. 47. Those count as "grounds that apply generally to the class" under Rule 23(b)(2) because if plaintiffs succeed in proving that defendants' reasons are untrue, as the complaint alleges, *see* Compl. ¶ 45 (generally alleging inadequate funding, personnel, and management causing delays), or if plaintiffs demonstrate that federal law categorically does not countenance delay for one or both reasons, a

33

single injunction can remedy the problem. *See Dukes*, 564 U.S. at 360 (stating that "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted" (quotation omitted). As Judge Bucklo aptly put the matter, "[i]t would be difficult to argue" that the injunctive and declaratory relief plaintiffs seek—enforcing compliance with timeliness requirements of federal law—would not "benefit the whole class." *Heritage Operations Grp.*, 322 F.R.D. at 326.

Because plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) the court certifies the following class:

> All individuals who on or after February 1, 2015, have applied to be determined to be eligible for long-term care Medicaid benefits from the State of Illinois, and have not received a final eligibility determination or a notice of an opportunity for a hearing within 45 days of the date of application in non-disability cases or 90 days in disability cases.

## V. PRELIMINARY INJUNCTION

Plaintiffs move for a preliminary injunction requiring defendants to comply with the "reasonable promptness" requirement of § 1396a(a)(8) and the prompt-payment requirement of § 1396a(a)(37). The court determines that issuing a limited preliminary injunction addressing the first issue is proper.

### A. Standard for Issuing a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy" that is never "awarded as a matter of right." *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) for first proposition and *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) for the second). To obtain a preliminary injunction, plaintiffs

"must establish" four things: "(1) that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in [their] favor, and (4) that an injunction is in the public interest." *Higher Society of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1117 (7th Cir. 2017) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (numbering added). The analysis proceeds in two steps. *Whitaker*, 858 F.3d at 1044 (citing *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). First, plaintiffs must first show that they are likely to suffer irreparable injury while the case is pending, that there are no adequate remedies at law, and that they have "a reasonable likelihood of success on the merits." *Id.* (citing *Turnell*, 796 F.3d at 661–62). "If the movant successfully makes this showing, the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* (citing *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016)).

**B. Likelihood of Success**

Earlier in this opinion, the court dismissed plaintiffs' ADA claims and their claims for prompt payment under 42 U.S.C. § 1396a(a)(37), and associated regulations. The dismissal and the reasons for it dim plaintiffs' prospects for success on those claims. The prompt-payment claim may prove particularly troublesome because the issue plaintiffs have failed to address goes to their ability to bring a private suit to enforce the prompt payment requirement at all. Indeed, despite receiving clear notice from defendants that they were raising the private enforceability issue and plaintiffs' filing of a surreply and a notice of supplemental authority, they have yet to identify a case holding squarely that § 1396a(a)(37) is privately enforceable.

Generally, "[t]he lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons." *O.B.*, 170 F. Supp. 3d at 1200 (quoting *Lee v. Orr*, No. 13–cv–8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013)). Here, however, the denial of certification and the reasons for that denial weigh against awarding a preliminary injunction. Furthermore, the named plaintiffs' claims have been satisfied, so they will be unable to obtain a permanent injunction, which is all the relief they seek, without certification of a class on the prompt payment issue, yet the court has declined to certify such a class. For these reasons, the court finds that plaintiffs have a fairly low likelihood of success on the merits of the claims they seek to bring on behalf of their proposed "pending admission" class.

But plaintiffs' prospects of success on their claims seeking prompt decisions on applications for long-term care Medicaid benefits appear considerably brighter. Those claims have survived defendants' motion to dismiss, and the court has certified a statewide class based on them. The court adopts Judge Bucklo's analysis of the governing federal law under 42 U.S.C. § 1396a(a)(8). *Doctors Nursing II*, 2017 WL 3838031, at *4–6. "A violation of Section 1396a(a)(8)'s reasonable promptness requirements may be shown when an application for Medicaid or long-term care eligibility has been pending for more than ninety days . . . ." *Id.* at *6. Undisputed evidence in the record here shows that thousands of applications remain pending beyond those deadlines. *See* ECF No. 9 Ex. A, Tbls. 1, 2. And the evidence before Judge Bucklo from a group of about 300 class members demonstrates that those statistics are correct. *See Doctors Nursing II*, 2017 WL 3838031, at *6–7.

Defendants argue that many of these delays are due to factors beyond their control, such as the applicant's failure to respond to requests for additional documents. That may be true in

some cases but not all.  Even by defendants' timeline, DHS waited more than 90 days to send a first request for additional documents to plaintiff Small.  *Compare* Compl. ¶ 56 (application tendered no later than January 2016), *with* Kinney Decl. ¶ 6, Aug. 25, 2017, ECF No. 47-1 (first request for additional documents sent April 6, 2016).  Her case appears to have languished for about a year in an Office of Inspector General ("OIG") referral before being processed.  *See* Kinney Decl. ¶¶ 10–12.  Plaintiff Koss applied a second time for long-term care Medicaid benefits in June 2016.  Compl. ¶ 54.  More than six months later, according to defendants' timeline, her application was referred to OIG for a fraud investigation; defendants do not explain this delay.  *See* Blankenship Decl. ¶¶ 16–18, Sept. 1, 2017, ECF No. 47-2.  Finally, defendants blame plaintiff Harris' NF for a data entry error that led to a delay in the start of payments.  *See id.* ¶¶ 8–10.  They add that "DHS staff would not have been alerted to this problem at the time of the attempted transaction."  *Id.* ¶ 11.  Defendants say that it is the NF's responsibility to enter a transaction properly, *id.* ¶ 13, but plaintiffs have a more than negligible chance of proving the lack of a system to catch errors like this can be remedied systemically.  And the statistical evidence plaintiffs cite and Judge Bucklo had before her tends to undermine the notion that Koss, Small, and Harris are outliers.  *See Doctors Nursing II*, 2017 WL 3838031, at *6–7.

To obtain a preliminary injunction, plaintiffs need to "show that [they have] a 'better than negligible' chance of success on the merits of at least one of [their] claims" rather than absolute certainty of success.  *Girl Scouts*, 549 F.3d at 1096 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)); *see also Whitaker*, 858 F.3d at 1046 (emphasizing that "[t]his is a low threshold" (citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011))).  They have made that showing here, though the court intimates no view on whether they will succeed at a later stage.

**C. Irreparable Injury and No Adequate Remedy at Law**

Showing irreparable injury requires "more than a mere possibility of harm," but "[i]t does not . . . require that the harm actually occur before injunctive relief is warranted." *Whitaker*, 858 F.3d at 1045 (citing *U.S. Army Corps of Eng'rs*, 667 F.3d at 788). Plaintiffs assert that without preliminary relief they face the possibility of the "denial or imminent risk of denial of necessary long-term care, medical services, prescription drug benefits and other public assistance . . . ." Mot. Prelim. Inj. 7, ECF No. 9.

Plaintiffs have demonstrated more than a mere possibility of the denial of medical care. If plaintiffs can show that members of the class face the risk of "be[ing] denied necessary medical care" without a preliminary injunction, "then they may demonstrate that they lack an adequate remedy at law and stand to suffer irreparable injury." *Doctors Nursing II*, 2017 WL 3838031, at *8 (citing *O.B.*, 170 F. Supp. 3d at 1196 (other citation omitted)); *see also O.B. v. Norwood*, 838 F.3d 837, 840–43 (7th Cir. 2016) (affirming award of preliminary injunction to address delays in finding appropriate medical care for children with serious medical needs). Koss' declaration shows that the risk became a reality for her. She avers that while her application for long-term care Medicaid benefits was pending, she lost her eyesight because her ophthalmologist hadn't been paid and wouldn't give her needed eye injections (she was unable to find any medical provider who would help her). *See* Koss Decl. ¶ 6, Mar. 29, 2017, ECF No. 9-3 Ex. B. Plaintiffs have submitted uncontroverted declarations of two NF operators describing the financial and administrative pressure the delays put on them. *See* Smith Decl. ¶ 10, Mar. 31, 2017, ECF No. 9-8; Holden Decl. ¶ 10, Apr. 12, 2017, ECF No. 9-9. From this evidence and Koss' experience the court draws the reasonable inference that class members face similar risks

of losing their spots in NFs or being denied needed medical care Medicaid should have covered because they are poor and their applications remain pending for more than 90 days.

As defendants point out, there is no evidence that the formal process for discharging any named plaintiff has been initiated. The state has such a process, and it provides procedural protections to facility residents. *See* 42 C.F.R. § 483.12(a)(2); 210 Ill. Comp. Stat. Ann. 45/3-401(d) (West 2018). Defendants make a fair point, but it does not mitigate the risk Koss' experience exemplifies: members of the class face the risk of denial of medical care from providers outside an NF or SLF. Even if the state discharge process provides some protection to NF and SLF residents (a matter that is unclear on this record), defendants point to nothing protecting other class members from something like what happened to Koss. Moreover, plaintiffs don't need to show an imminent risk of the denial of medical care to establish irreparable injury; a "[p]otential termination of necessary medical care is enough." *Doctors Nursing II*, 2017 WL 3838031, at *9 (citing *Bontrager v. Ind. Family & Social Servs. Admin.*, 697 F.3d 604, 611 (7th Cir. 2012)) (other citations omitted) (rejecting the same argument made by defendants); *see also Whitaker*, 858 F.3d at 1045; *O.B.*, 838 F.3d at 840–41. Plaintiffs have accordingly carried their burden to show that they face a risk of irreparable injury for which they have no adequate remedy at law.

**D. Balance of Harms**

At the second step, the court "balance[s] the harms faced by [the] parties and the public as a whole." *Whitaker*, 858 F.3d at 1054 (citations omitted). The court strikes this balance "on a 'sliding scale' measuring the balance of harms against the moving party's likelihood of success." *Id.* (quoting *Turnell*, 796 F.3d at 662). The scale slides because the balancing is designed to minimize the harm of a mistake about the plaintiffs' chances of success. *See Girl Scouts*, 549

F.3d at 1100.  As the plaintiffs' chances of success grow, the degree to which the balance of harms must favor them shrinks, and the converse holds true: as plaintiffs' chances fall, the balance must favor them more.  *Whitaker*, 858 F.3d at 1054 (citing *Turnell*, 796 F.3d at 662).

On prompt payment of bills for those deemed eligible, Judge Bucklo has already ordered defendants to "bring HFS's claims processing procedures into compliance with 42 U.S.C. § 1396a(a)(8)'s reasonable promptness requirement and the timely payment provisions of 42 C.F.R. § 447.45."  *Doctors Nursing II*, 2017 WL 3838031, at *10.  That relief does not appear to be limited to the class of 27 applicants she has before her.  *See id.*  To obtain the same relief, plaintiffs here proceed under a different Medicaid provision.  *Compare* 42 U.S.C. § 1396a(a)(8), *with id.* § 1396a(a)(37).  For the reasons already explained, there is reason to doubt plaintiffs' likelihood of succeeding under the distinct statutory provision at issue in Count III, which has been dismissed.  That alone militates against awarding identical relief here, and entering a second injunction also risks conflict with Judge Bucklo's management of the issue in the cases before her.  For these reasons, the balance of public and private harms disfavors a prompt-payment injunction.

That leaves the portion of the requested relief dealing with processing applications.  The bone of contention on the balance of harms grows out of plaintiffs' request that applicants be treated as presumptively eligible for payments after the deadlines to process the applications pass.  *See* Mot. Prelim. Inj. 8, ECF No. 9 (requesting that defendants be ordered to "pay the long-term care and other Medicaid benefits to (or for the benefit of) Plaintiffs and Class Members while their applications remain pending beyond the Medicaid Act's deadlines").  Defendants remind the court that they must collect and analyze voluminous financial documents to determine eligibility for long-term care Medicaid benefits with an eye toward assuring that

40

Medicaid does not become an estate planning tool. *See* 42 U.S.C. §§ 1396p(c)–(f), 1396r-5. Presumptive eligibility would harm the public interest, defendants say, by incentivizing applicants to file incomplete applications, leave out documents, drag their feet on document requests, and otherwise game the system, relying on the certainty that they will start to receive medical benefits in 45 or 90 days. Mem. Opp'n Mot. Prelim. Inj. 16–17, ECF No. 28.

Notably, and in contrast to their arguments before Judge Bucklo, defendants do not mention potential strains on Illinois' budget here. *Compare id. with Doctors Nursing II*, 2017 WL 3838031, at *9. Even if they had, Medicaid exists to provide medical services. So where, as here, the state is likely violating federal law, "[t]he public has an interest in ensuring that Medicaid eligible individuals promptly receive necessary medical services," and the public interest in making the state follow federal law outweighs any modest impact on its budget because that impact is likely what federal law requires. *Doctors Nursing II*, 2017 WL 3838031, at *9 (citing *Bontrager*, 697 F.3d at 611). The declarations of NF operators here show that each has had several applicants who died or were discharged while awaiting decisions on their applications. Smith Decl. ¶ 10; Holden Decl. ¶ 10. It is impossible to know how approval of their applications (if they were eligible) would have affected them. But it is fair to say that sometimes a delay is as bad as a denial of medical care, as Koss learned. As the Seventh Circuit put the matter when it affirmed an injunction setting deadlines and ordering presumptive eligibility under § 1396a(a)(8) in Illinois 37 years ago, "[o]n occasion the courts must act to make certain that what can be done is done. Agency inaction can be as harmful as wrong action. The [state] cannot, by its delay, substantially nullify rights which the Act confers, though it preserves them in form." *Smith v. Miller*, 665 F.2d 172, 179 (7th Cir. 1981) (quoting *Am. Broadcasting Co. v. FCC*, 191 F.2d 492, 501 (D.C. Cir. 1951)).

41

Defendants' concerns about possible abuse of hard-and-fast deadlines deserve serious attention, however. Judge Bucklo declined to order presumptive eligibility precisely because she did not have a statewide class before her. *Doctors Nursing II*, 2017 WL 3838031, at *10 (*citing Smith*, 665 F.2d at 180). But this court does. *Smith* approved the use of a presumption of eligibility in a statewide class to avoid the complexity of monitoring Illinois' compliance. *See Smith*, 665 F.2d at 179–80. Judge Bucklo could manage a 27-member class. But with thousands of pending applicants in the class here, the task of reviewing the reasons for delay could become a full-time job. As *Smith* explains, the Supreme Court discourages courts from getting involved in day-to-day Medicaid administration. 665 F.2d at 176 (citing *Rosado v. Wyman*, 397 U.S. 397, 422 (1970), and *Wright v. Califano*, 587 F.2d 345, 353–54 (7th Cir. 1978)). And what's more, court supervision does not really solve the delay problem; it just creates a new place, the federal court, in which to complain about delays. *Id.* All the court can do is again order DHS to comply with the deadlines it should have met in the first place. *See id.* Ordering presumptive eligibility provides a much more meaningful incentive to meet deadlines. *See id.* at 178 (explaining that case-by-case oversight in federal court on a large scale "strips the deadlines of much of their impact and the agency of most of its incentive to comply with the order").

For these reasons, and after carefully balancing these competing interests, the court concludes that a preliminary injunction, including presumptive eligibility, is warranted.

### VI. CONCLUSION

For the reasons stated, plaintiffs' motion for class certification, ECF No. 7, and their motion for preliminary injunction, ECF No. 9, are granted in part and denied in part. Defendants' motion to dismiss, ECF No. 30, is granted in part and denied in part. Counts III and IV of the complaint are dismissed. The court certifies the LTC Medicaid pending class, as

modified in this opinion, under Rule 23(b)(2). Until further order of this court or the entry of a

final judgment, defendants are ordered to:

> (a) determine, on or before June 28, 2018, the eligibility of Class Members for the long-term care Medicaid benefits for which they have applied;

> (b) implement policies and processes to ensure that the defendants prospectively comply with the Medicaid Act's deadlines for eligibility determination found in 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. 435.912;

> (c) beginning June 28, 2018, pay the long-term care and other Medicaid benefits to (or for the benefit of) Class Members while their applications remain pending beyond the Medicaid Act's deadlines for eligibility determination.

Defendants must file a status report on their compliance with this preliminary

injunction on or before April 30, 2018. A status conference is set for May 9, 2018, at

9:30 a.m.


Date: March 29, 2018                              _____/s/_____
                                                 Joan B. Gottschall
                                                 United States District Judge